The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUMAN RIGHTS DEFENSE CENTER,

    Plaintiff,

v.

PACIFIC COUNTY, *et al*.,

    Defendants.

Case No. 3:24-cv-6068-BJR

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS**

## I.    INTRODUCTION

This matter comes before the Court on a Motion for Attorneys Fees and Costs filed by Plaintiff Human Rights Defense Center ("HRDC"). Dkt. No. 41. Defendant Pacific County opposes the Motion. Having reviewed the briefs filed in support of and in opposition to the Motion, the exhibits, declarations, and caselaw relevant thereto, the Court finds and rules as follows.

## II.    BACKGROUND

### A.    HRDC's Allegations in this Lawsuit

HRDC is a not-for-profit charitable organization that seeks "to educate prisoners and the public" through "litigation, advocacy, and publication and/or distribution of books, magazines,

1 and other information concerning prisons and the rights of incarcerated persons." Dkt. No. 7,

2 Decl. of Paul Wright, ¶¶ 1-2. Since its founding in 1990, "HRDC has sent its publications to

3 prisoners and law librarians in more than 3,000 correctional facilities across the United States[.]"

4 *Id*., ¶ 13. Relevant here, HRDC alleges that it regularly mails magazines, books, and other

5 correspondence to individuals housed in the Pacific County Jail ("Jail"), located in Defendant

6 Pacific County ("the County"). HRDC asserts that in 2024 it sent more than 100 such mailings to

7 Jail inmates, and that Jail staff rejected them on at least 39 occasions. *Id*. ¶ 40. HRDC further

8 claims that the Jail provided no notice, explanation, or opportunity to challenge any rejection. *Id*.

9 ¶¶ 43, 52.

10       At the time, the Jail was operated by the Pacific County Sheriff's Office ("the Sheriff's

11 Office"), with Defendant Sheriff Garcia responsible for training and supervising Jail staff and

12 Defendant Mike Parker serving as Jail Commander. On December 30, 2024, HRDC filed a civil

13 rights lawsuit against the County, the Sheriff's Office, Sheriff Garcia, and Mr. Parker

14 (collectively, "Defendants"), alleging that Defendants maintained an unwritten policy or practice

15 governing prisoner mail that violated the First Amendment and the Due Process Clause of the

16 Fourteenth Amendment. Dkt. No. 1, Compl. ¶ 4.33.

17       **B.**     **HRDC's Motion for a Preliminary Injunction**

18       Thereafter, on January 3, 2025, HRDC filed a motion for a preliminary injunction to

19 enjoin Defendants from, among other things, "censoring mail without due process of law."

20 Compl., ¶ 6.2, Dkt. No. 5. The County opposed the motion, arguing that HRDC lacked standing

21 to seek a preliminary injunction and that its claims were moot. The County asserted that on

22 December 26, 2024, four days before HRDC filed its complaint, it passed Resolution 2024-056

23

24 ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS

25 - 2

1  ("the Resolution"), which created a new Department of Corrections known as Pacific County Jail

2  Services. *See* Dkt. No. 22, Byrd Decl., ¶ 3, Ex. A. The Resolution removed authority over the

3  Jail's operations and staff from the Sheriff's Office and Sheriff Garcia and instead vested that

4  authority in the County's Board of Commissioners. Byrd Decl., Ex. A. The County argued that

5  this change in the governing structure over the Jail's operations so irrevocably changed the

6  circumstances that HRDC no longer faced a real or immediate threat that it would be wronged in

7  the manner it alleged in its complaint.

8          This Court agreed with the County and denied HRDC's motion for a preliminary

9  injunction. Dkt. No. 30. While the Court determined that HRDC had failed to meet its burden of

10  demonstrating that it had standing to obtain injunctive or other prospective relief at that time, the

11  Court noted that "emerging facts may demonstrate otherwise" as the "case unfolds." *Id*. at 6.

12          **C.      Discovery**

13          The parties proceeded to discovery, including serving written discovery requests on each

14  other. HRDC claims that the actions of the County and the other Defendants in the case

15  necessitated several discovery conferences and correspondence "to ensure that discovery

16  proceeded efficiently." Dkt. No. 41 at 5. HRDC alleges that it also prepared for an in-person

17  FRCP 34 inspection of the Jail, a FRCP 30(b)(6) deposition of the County, and the depositions of

18  six individuals. However, it only ended up taking two depositions, that of James Byrd, the Jail's

19  new Director, and Officer Delgado, a corrections officer at the Jail. Both depositions occurred on

20  June 27, 2025.

21

22

23

24  ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS
    FEES AND COSTS

25      - 3

**D.     The County Makes a Rule 68 Offer of Judgment**

On July 1, 2025, the County served HRDC with a Rule 68 Offer of Judgment, which HRDC accepted. Pursuant to the Rule 68 Offer and the parties' stipulation, HRDC took judgment against the County in the amount of $40,001.00, plus attorneys' fees and costs to be determined by the Court, and unconditionally surrendered all claims against Sheriff Garcia and Mr. Parker.[1] The County also agreed to subscribe to one copy of HRDC's Prison Legal News Publication and place the publication in the Jail library where it can be accessed by all inmates.

**E.     HRDC's Motion for Attorneys' Fees and Costs**

HRDC requests $179,862.50 in attorneys' fees for work performed in this litigation through October 7, 2025. *See* Dkt. No. 49 ("Second Chamberlain Dec.") ¶ 1. This amount reflects the following time entries for four attorneys and two paralegals:

- Jesse Wing, Attorney at MacDonald Hoague & Bayless ("MHB"), $650/hour for 30.1 hours, for a total of $18,888.50

- Katherine Chamberlain, Attorney at MHB, $525/hour for 117 hours for a total of $61,452.00

- Nathaniel Flack, Attorney at MHB, $400/hour for 121.4 hours for a total of $48,560.00

- Jonathan Picard, Attorney at HRDC, $500/hour for 56.2 hours or a total of $28,100.00

- Cristy Caldwell, Paralegal at MHB, $200/hour for 25.7 hours for a total of $5,140.00

---

[1] The parties filed a stipulation of voluntary dismissal of the Sheriff's Office pursuant to FRCP 41(a)(1)(A)(ii) on July 31, 2025. Dkt. No. 36.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS

- 4

- Derek Gronquist, Paralegal at HRDC, $225/hour for 124.1 hours for a total of $27,922.50[2]

*See* Dkt. No. 42 ("Chamberlain Dec."), Exs. 1–2; Dkt. No. 43 ("Picard Dec."), Exs. 1, 3; Dkt. No. 50 ("Third Chamberlain Dec."), Exs. 1-3. HRDC also seeks $4,128.85 in costs. Second Chamberlain Dec. at ¶ 1.

### III.    LEGAL STANDARD

The party seeking an award of attorneys' fees bears the burden of proving reasonableness of the award. *Stormans Inc. v. Selecky*, 906 F. Supp. 2d 1093, 1100 (W.D. Wash. 2012). The "most useful starting point" for determining the reasonableness of an attorneys' fee award is the lodestar calculation—"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The resulting lodestar figure is presumed to represent a reasonable fee, though the court may adjust it upward or downward after considering various factors known as the *Kerr* factors.[3] *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). However, courts are cautioned not to apply the *Kerr* factors reflexively in every case because the lodestar carries a "strong presumption" of reasonableness. *Abrams v. Sequium Asset Solutions, LLC*, 2023 WL 2757195, at *3 (W.D. Wash. Mar. 31, 2023). The Ninth Circuit presumes that the initial lodestar calculation already

---

[2] HRDC agreed to reduce the billed amount by $5,250.00 after reviewing the County's opposition brief. *See* Third Chamberlain Dec. at ¶ 1. The requested amount also includes .7 hours for Attorney Timothy Ford. Chamberlain Dec., Ex. 1.

[3] The *Kerr* factors include (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS

- 5

incorporates considerations such as the novelty and complexity of the issues, counsel's skill and experience, the quality of representation, the results obtained, and the contingent nature of the fee agreement. *Id*. (citing *Gonzales v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013)); *see also Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006) ("We have previously said that only in rare circumstances should a court adjust the lodestar figure, as this figure is the presumptively accurate measure of reasonable fees.").

IV.   DISCUSSION

HRDC asserts two independent grounds for an award of attorney's fees and costs. First, HRDC contends that, as the prevailing party in this civil rights action, it is entitled to recover reasonable attorneys' fees under 42 U.S.C. § 1988. Second, HRDC relies on the parties' stipulated judgment that expressly provides that HRDC is entitled to "reasonable attorney's fees and costs as subsequently determined by the Court." Dkt. No. 37 at (a). The County does not dispute HRDC's entitlement to recover fees and costs; it challenges only the amount sought. The County argues that both the number of hours billed, and the hourly rates charged by HRDC's counsel are unreasonable and urges the Court to significantly reduce HRDC's fee recovery.

A. Whether the Number of Hours Requested by HRDC's Attorneys Is Reasonable

A court "typically defers 'to the wining lawyer's professional judgment as to how much time he was required to spend on the case,'" *Abrams v. Sequim Asset Solutions, LLC*, 2023 WL 2757195, at *6 (W.D. Wash. Mar. 31, 2023) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)), "but it does not 'uncritically accept counsel's representation concerning the time expended,'" *Id*. (quoting *Jordan v. Multinomah Cnty.*, 815 F.2d 1258, 1263 n. 8 (9th Cir. 1987)). In assessing the number of hours "reasonably expended," courts consider

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS

- 6

whether the time billed was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (courts may exclude hours that are excessive, redundant, or unnecessary in determining the reasonableness of time expended). In making this determination, a court "should weigh the hours claimed" against its "own knowledge, experience, and expertise of the time required to complete similar activities." *Selecky*, 906 F. Supp. 2d at 1101 (quoting *Agster v. Maricopa County*, 486 F. Supp. 2d 1005, 1012 (D. Ariz. 2007)). Attorneys seeking fees must also provide sufficiently detailed documentation of the tasks performed to allow the court to evaluate the reasonableness of the hours claimed. *Hensley*, 461 U.S. at 433. Where the submitted documentation is inadequate, the court may reduce the award accordingly. *Id*.

      Here, HRDC seeks reimbursement for 475.2 hours expended by its legal team on this litigation through October 2025. *See* Chamberlain Dec., Exs. 1–2; Picard Dec., Exs. 1, 3; Third Chamberlain Dec., Exs. 1-3. The County argues that 475 hours is an unreasonable amount of time to spend on this case. It alleges that HRDC unreasonably "overstaff[ed]" the case with four attorneys and two paralegals, which led to unnecessary and duplicative work being done by its legal team. It further contends that the Court should reduce the hours claimed due to counsels' use of "block billing," which makes it difficult to discern the time spent on specific tasks. The County also objects to the more than 76 hours billed for preparing and filing HRDC's unsuccessful preliminary injunction motion. *See* Dkt. No. 46 at 9–10. The Court addresses each of the County's objections in turn.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS

- 7

### 1. Alleged Overstaffing

The Court agrees with the County that this matter did not require a litigation team of four attorneys and two paralegals, and further finds that expending more 475 hours on this case is excessive. Nothing in the record justifies such staffing or billing levels, and HRDC offers no adequate explanation for them. Indeed, HRDC affirmatively represented that this was not a complex case. *See* Dkt. No. 27 at 1 ("Plaintiff does not believe the case to be complex."). The litigation has been pending for less than a year, includes only 50 docket entries (19 of which relate to the voluntary settlement and the instant motion), involved a single substantive motion, and entailed limited discovery.

Rather than substantively addressing its staffing decisions, HRDC focuses on disputing the County's characterization of the number of attorneys and firms involved (asserting that it did not retain two law firms and that the County mistakenly identified a paralegal as an attorney). Based on the Court's experience, however, this case could have been handled effectively and efficiently by two attorneys and one paralegal, with substantially fewer hours expended. Accordingly, the Court will consider the hours billed by HRDC's in-house counsel (Mr. Picard) and paralegal (Mr. Gronquist) prior to the filing of this lawsuit (December 30, 2024), and only the hours claimed by the two attorneys who billed the most time (Katherine Chamberlain and Nathanial Flack) and one paralegal (Ms. Caldwell), after the case was filed.

### 2. Time Spent Collaborating, Supervising, and Reviewing Work

The County objects to time billed by HRDC's counsel to review, revise, and supervise the work of the associate attorney (Mr. Flack) on the case, as well as for time spent conferencing and collaborating. *See* Dkt. No. 46 at 7 (specifically objecting to a total of .5 hours billed for

"review[ing]" Mr. Flack's work and "instruct[ing]" Mr. Flack to request that defense "accept service of process"). The Court rejects the County's objection to this billing practice. It is reasonable and indeed preferable that a seasoned attorney delegate tasks to junior associates in order to provide cost-effective services to their clients. This, of course, necessitates some supervision by those delegating the work and the County has failed to establish that HRDC's counsel did so excessively. *See*, *e.g.*, *Graves v. Penzone*, 2020 WL 1984022, *8 (D. Ariz. April 27, 2020) ("Clients should not be charged for general training of junior lawyers" but delegating work is cost-effective and "necessitates supervision on the part of those delegating work"). Likewise, it is appropriate for the attorneys on a legal team to discuss and strategize about the case. *See Abrams v. Sequim Asset Solutions, LLC*, 2023 WL 2757195, at *10 (W.D. Wash. Mar. 31, 2023) (attorney time spent strategizing, discussing case activities, and updating each other on development is compensable). Thus, the Court does not discount HRDC's counsels' time spent collaborating and/or supervising and reviewing work.

### 3. Alleged Use of Block Billing

An attorney seeking fees "must provide reasonable documentation of the work performed." *Innovative Solutions International, Inc. v. Houlihan Trading Co., Inc.*, 2025 WL 949579, *3 (W.D. Wash. March 27, 2025) (quoting *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 203 (Wash. 1983)). The documentation does not need to be exhaustive or in minute detail, but it must inform the court of the type of work performed and the category of attorney who performed the work. *Id*. Therefore, a court should discount for entries that are unreasonably block-billed or so vague that they affect a court's ability to assess the reasonableness of the fees requested. *Id*. (citing *See Ewing v. Glogowski*, 394 P.3d 418, 422–423 (Wash. Ct. App. 2017)

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS

- 9

(affirming fee discount where trial court found "entries which cannot be attributed because they are vague or blank")).

The County contends that "vast swaths of HRDC's bills—and those of Mr. Flack in particular—reflect block billing that makes it difficult to determine the amount of time spent on particular tasks." Dkt. No. 46 at 9. On that basis, the County asks the Court to "reduce these block billed fees." *Id*. Having carefully reviewed the submitted timesheets, the Court disagrees with the County's characterization. The entries for Mr. Flack, Mr. Picard, and Ms. Chamberlain identify the billing attorney, adequately describe the work performed, and specify the time spent on each task. Accordingly, the Court declines to reduce their hours on the basis of alleged block billing.

The Court does find, however, that several of Mr. Gronquist's entries are too vague to permit a meaningful assessment of their reasonableness. These entries therefore are not compensable. The Court strikes the following entries for Mr. Gronquist:

- 5/22/24 – "Processing outreach"
- 5/29/24 – "Processing evidence"
- 6/06/24 – "Processing evidence"
- 7/08/24 – "Processing evidence"
- 9/11/24 – "Processing evidence"
- 9/13/24 – "Investigating censorship"
- 9/24/24 – "Investigating censorship"
- 9/25/24 – "Investigating censorship"
- 10/08/24 – "Investigating censorship"
- 10/14/24 – "Processing evidence"

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS

- 10

      • 11/18/24 – "Investigating censorship"

      • 11/20/24 – "Evidence review"

      • 11/21/24 – "Evidence review"

Dkt. No. 43, Ex. 1. Mr. Gronquist's remaining time entries through December 29, 2024 are compensable.

### 3. Hours Expended on Motion for Preliminary Injunction

The County further urges the Court to disallow fees for time HRDC spent litigating its unsuccessful motion for a preliminary injunction, asserting that such fees "are not properly chargeable" to the County. Relying on *Cabrales v. County of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991), HRDC argues that it is entitled to recover these fees under established Ninth Circuit precedent. In *Cabrales*, the plaintiff secured a $150,000 jury verdict in her civil rights action. After the defendant sought certiorari, the Supreme Court vacated the judgment and remanded for reconsideration in light of intervening authority. The Ninth Circuit concluded the new authority was inapposite and reinstated the judgment. The defendant again sought certiorari, which the Supreme Court denied. The plaintiff then sought attorney's fees, including fees incurred in opposing the initial certiorari petition. Although the plaintiff had been unsuccessful at that stage, the Ninth Circuit held that the fees were recoverable, observing: "Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war." *Id*. at 1053. HRDC contends that the same reasoning applies here, asserting that although it did not prevail on its preliminary injunction motion, the work contributed to its overall success and is therefore compensable.

HRDC, however, overlooks a key limitation recognized in *Cabrales*: a prevailing civil rights plaintiff may recover fees for an unsuccessful phase of litigation only if that phase "was a

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS

- 11

necessary step to her ultimate victory." *Id*. Unlike the defense against certiorari in *Cabrales*, HRDC's preliminary injunction motion was neither warranted nor necessary to its ultimate success. As noted above, four days before HRDC filed its complaint, the County passed a resolution transferring oversight of the Jail and its correspondence policies away from the Sheriff's Office; the resolution became effective on January 1, 2025, one day before service of the complaint and two days before HRDC filed its preliminary injunction motion. The County notified HRDC of this legislative change and asked HRDC to withdraw the motion to avoid unnecessary fees, claiming that the motion had become moot. Dkt. No. 47, "Throgmorton Dec." Ex. A. HRDC declined to do so and ultimately lost the motion because it could not demonstrate a risk of imminent harm in light of the administrative change. HRDC now argues that the County acted only because HRDC filed suit; even if that were true, the preliminary injunction motion itself was not a necessary step in securing HRDC's ultimate relief. Accordingly, the Court concludes that HRDC is not entitled to recover fees incurred on the preliminary injunction motion after January 22, 2025, the date it received notice that the County had taken corrective action in response to this litigation.

### 4.  Fees on Fee Litigation

HRDC seeks $25,022.50 in fees for work it expended on the instant motion. This Court has already reduced this amount by $2,292.50 to $22,730.00 (by eliminating time spent by Attorneys Wing and Picard and Paralegal Gronquist on the fee petition) *supra*. The Court finds that this amount is still excessive for a simple fee petition and therefore reduces the amount of compensable fees for fee litigation to $19,000.00 total.

**B.      Whether HRDC's Counsel Charged a Reasonable Rate**

Having determined the reasonable number of hours billed in this matter, this Court must now determine whether the hourly rates charged by HRDC's attorneys are reasonable. A reasonable hourly rate is derived from the "prevailing market rates in the relevant community," *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003), and the "relevant community" is the forum in which the case was brought. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997); *see also*, *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (rates of comparable attorneys in the forum district are usually used to determine reasonable hourly rates). The moving party bears the burden of establishing the prevailing market rate. *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). This burden can be satisfied with "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community" as well as evidence of "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney[.]" *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

HRDC seeks $400 per hour for Mr. Flack. Mr. Flack has practiced civil rights and employment litigation since 2021. HRDC seeks $500 per hour for Mr. Picard who has practiced law since 2013, including six years as an Assistant Attorney General for the State of Florida. He became in-house counsel for HRDC in 2024. HRDC seeks $525 per hour for Ms. Chamberlain who has practiced civil rights and employment law for over twenty years. Lastly, HRDC seeks $200 per hour for Ms. Caldwell who has been a paralegal for approximately twenty years and $225 per hour for Mr. Gronquist who has been a paralegal with HRDC since 2023 and prior to that, owned a paralegal business and ran a nonprofit corporation.

1    In support of the foregoing rates, HRDC presents the declarations of Erik Heipt and Toby

2    Marshall, two attorneys who represent clients in civil rights matters in this District, and who

3    testify that the hourly rates requested by the foregoing attorneys and paralegals are reasonable.

4    Dkt. No. 44, "Heipt Dec."; Dkt. No. 45 "Marshall Dec.". HRDC also presents evidence that

5    numerous judges in this District and King County Superior Court have approved the requested

6    rates for Ms. Chamberlain, Mr. Flack, and Ms. Caldwell. *See* Chamberlain Dec. at ¶¶ 29-33, 39-

7    43. In addition, HRDC presents evidence that at least two federal courts (outside this District)

8    have awarded Mr. Picard and Mr. Gronquist fees far in excess of the hourly rate requested in this

9    case. *See* Picard Dec. at ¶¶ 6-9.

10    The County contends that the hourly rates for Messrs. Flack and Picard should be capped

11    at $375, and that Ms. Chamberlain's rate should be reduced to $450.[4] In support, the County

12    relies on a single, distinguishable case from this District while disregarding the other authority

13    cited by HRDC in which courts have approved these same attorneys' rates in this forum.[5] The

14    County likewise fails to address the Heipt and Marshall declarations. In short, the County has not

15    meaningfully rebutted HRDC's evidence demonstrating that the requested rates are reasonable.

16    Therefore, the Court finds the rates reasonable in light of the prevailing market for the relevant

17    forum. Attorneys Flack, Picard, and Chamberlain are awarded fees at the hourly rates requested.[6]

18

19

20    [4] The County does not challenge the requested rates for Ms. Caldwell and Mr. Gronquist.
       [5] The County cites to *Tole v. Amazon.com, Inc.*, a recent USERRA case from this District in which the judge
       declined to award the requested rates of $1,200, $900, and $600 because counsel had failed to provide adequate
21    evidentiary support for the rates. 2025 WL 474248, *5 (W.D. Wash. Nov. 5, 2025) (noting that customarily counsel
       "will provide a declaration from an attorney based in Washington who knows counsel's work in general and their
22    work on the matter in question and who will opine on whether their requested rates are reasonable and in line with
       an attorney of their skill, expertise, and reputation for this locality").
       [6] The County does not dispute Plaintiff's requested costs of $4,128.85; the Court will award these costs.
23
       ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS
24    FEES AND COSTS

25     - 14

## V. CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS in part and DENIES in part Plaintiff's Motion for Attorneys Fees and Costs. The Court RULES that:

1. Plaintiff is awarded attorney's fees as follows:

   a. Attorney Picard for work completed on this litigation September 4, 2024 through December 29, 2024 at a rate of $500 per hour;

   b. Paralegal Gronquist for work completed on this litigation May 22, 2024 through December 29, 2024, except for the time entries disallowed by this Court noted *supra*, at a rate of $225 per hour;

   c. Attorney Flack for work completed on this litigation December 30, 2024 through July 31, 2025 at a rate of $400 per hour, except for work expended on the preliminary injunction motion after January 22, 2025;

   d. Attorney Chamberlain for work completed on this litigation December 30, 2024 through July 31, 2025 at a rate of $525 per hour, except for work expended on the preliminary injunction motion after January 22, 2025; and

   e. Paralegal Caldwell for work completed on this litigation December 30, 2024 through July 31, 2025 at a rate of $200 per hour, except for work expended on the preliminary injunction motion after January 22, 2025.

2. Plaintiff is awarded $18,000.00 total for attorney's fees related to the fee litigation;

3. Plaintiff is awarded costs in the amount of $4,128.85; and

3. The parties shall jointly file a proposed order that comports with the terms of this decision within ten business days of the date of this order.

DATED this 26th day of November 2025.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge